UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| CARRINGTON MORTGAGE SERVICES, LLC, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | 2:16-cv-00534-NT |
| ROXANE M. GIONEST, | ) ) ) | |
| Defendant. | ) | |

# ORDER

A judicial settlement conference was held in this case nearly a year ago, on March 9, 2018. Following the settlement conference, I issued two orders, the first of which directed the parties to take certain steps to advance the settlement process based on the parties' representations during the conference. ECF No. 32. The second order instructed Plaintiff Carrington Mortgage Services, LLC ("Carrington Mortgage") to show cause regarding its failure to comply with the first order. ECF No. 35. The Defendant, Roxane Gionest Haynes,[1] ("Haynes") maintains that Carrington Mortgage failed to comply with both orders and seeks dismissal on that basis. After conducting two evidentiary hearings on the issue, I conclude that Carrington Mortgage failed to comply with this Court's orders and that the appropriate sanction for Carrington Mortgage's misconduct during the settlement process is to award Haynes her reasonable attorney's fees.

---

[1] Ms. Haynes married after this action was initiated and her married name is not reflected on the docket.

## I.  FACTUAL BACKGROUND

On November 7, 2008, Haynes secured a home loan by executing a mortgage, which was assigned to Carrington Mortgage in July 2015.  Around the fall of 2015, Haynes hired legal counsel after submitting several applications for loan modifications with Carrington Mortgage.  In July 2016, Carrington Mortgage notified Haynes that the payments on her mortgage were past due.  Carrington Mortgage then initiated this federal foreclosure action on October 25, 2016.  Since this litigation began, Haynes has submitted at least five additional loan modification requests, each of which was denied.

In June 2017, after Haynes had submitted her fourth loan modification application, the parties attended a mediation with a private mediator.  According to the mediation report, Carrington Mortgage informed Haynes that the reason for the loan modification denial dated March 2, 2017, was that it was not evident from the application package that her husband contributed income to household expenses, and that her income alone did not leave a sufficient surplus, after accounting for household expenses.  Haynes insisted that she had submitted documentation of her husband's income contribution, but that Carrington Mortgage had failed to consider it.  The report reflects that Carrington Mortgage gave Haynes detailed instructions about what documents she needed to submit to allow Carrington Mortgage to consider the couple's joint income in assessing Haynes' eligibility for a loan modification.  After the private mediation, Carrington Mortgage rejected more loan modification applications submitted by Haynes.

The parties attended a judicial settlement conference before me on March 9, 2018, during which Carrington Mortgage represented that, upon submission of a new loan modification package, it would re-evaluate Haynes' eligibility for a loan modification based on both her income and her husband's income. Later that same day, I issued an Order ("March 9 Order"), which instructed the attorney for Carrington Mortgage to "file a written report" by April 25 "setting forth the steps taken by Carrington Mortgage to evaluate the Haynes' request, and providing the Court with Carrington Mortgage's preliminary, good faith assessment of the Haynes' eligibility for a modification." ECF No. 32 ¶ 4. The March 9 Order also required Carrington Mortgage to explain to Haynes the basis for a denial of her loan modification request, should that be the outcome. *Id.* ¶ 5.

The Court did not receive the written report assessing Haynes' eligibility for a modification based on both her income and her husband's income by April 25, as required by the March 9 Order. Five days after the April 25 deadline, the attorneys for Carrington Mortgage withdrew their appearances. On May 9, at which time no eligibility assessment had been filed and no new attorney had entered an appearance on behalf of Carrington Mortgage, I issued an Order ("Show Cause Order") instructing Carrington Mortgage to file a verified response within seven days "showing cause as to why the Complaint (ECF No. 1), should not be dismissed, with prejudice, for failure to comply with the [March 9 Order]." ECF No. 35.

On May 14, a new attorney entered an appearance and Carrington Mortgage filed an unverified response to the Show Cause Order informing the Court that its new attorney had not received the transfer file for the case until May 3. The response

also stated that Carrington Mortgage had denied Haynes' request for a loan modification following the judicial settlement conference, and that it had sent her a letter to that effect on April 3. That letter did not include an explanation for the denial and indicated that, yet again, only Haynes' income was considered in determining her eligibility for a loan modification. In her reply to Carrington Mortgage's response to the Show Cause Order, Haynes requested that the Court dismiss the case with prejudice based on Carrington Mortgage's failure to comply with both the March 9 Order and the Show Cause Order.

Two evidentiary hearings were then held to determine whether Carrington Mortgage had complied with the March 9 Order and the Show Cause Order. The first hearing took place on July 24, 2018, at which the Court received testimony from Clayton Gordon, a Default Litigation and Mediation Supervisor employed by Carrington Mortgage. ECF No. 47 at 4-5. Gordon testified that "guidelines" and "guidance" from the United States Department of Agriculture ("USDA") prohibited Carrington Mortgage from considering Haynes' husband's (i.e., a non-borrower's) income towards eligibility for a loan modification because "the non-borrower contributor's monthly income greatly outweighed that of the borrower's income." *Id.* at 12. Therefore, Gordon explained that Carrington Mortgage had considered only Haynes' individual income in determining her eligibility for a loan modification, and because her income alone was too low, the request was denied. *Id.*

After the hearing, Haynes' attorney unsuccessfully attempted to locate USDA guidelines that would support Carrington Mortgage's view that it was prohibited from considering the income of Haynes' husband. Haynes then moved to reopen and

supplement the record (ECF No. 50) to establish the existence of the guidelines that Gordon had referenced in his testimony. A telephonic hearing was held on August 17, during which Carrington Mortgage was unable to provide a citation to any USDA guidelines. Carrington Mortgage also represented again that it was willing to consider Haynes' husband's income but explained for the first time that, in order for it to do so, Haynes would need to submit a new loan modification application package with a contribution letter indicating what percentage of the loan payments would be paid by her husband. The absence of the contribution letter in prior loan modification applications was, according to Carrington Mortgage, at least part of the reason that those loan modification requests had been denied. At the conclusion of the telephonic hearing, I granted Haynes' motion to reopen the record.

The second evidentiary hearing took place on October 1, 2018, for the narrow purpose of identifying the USDA guidance that Gordon had testified about on July 24. Carrington Mortgage called Gordon to the stand again, and he testified that the USDA guidance that he had referenced was actually an e-mail from a USDA supervisor to a Carrington Mortgage employee, dated October 12, 2016, in response to an inquiry from Carrington Mortgage about non-borrower income. *See* ECF No. 63-8. The e-mail states, in relevant part, that non-borrower income may be used "to support borrower income," as long as "the major contributor is the borrower." *Id.* In other words, "[n]on-borrower income may not be the only source of income and/or the lion's share." *Id.* Gordon testified that he did not know whether the e-mail inquiry from Carrington to the USDA was tied to any particular loan, including Haynes' loan, or whether it was a general inquiry. The e-mail also included an excerpt from a set

5

of published USDA loan regulations.  Gordon testified that the regulations do not explicitly state that a non-borrower's income cannot be considered if it outweighs the borrower's income, but that because the regulations themselves are unclear, Carrington Mortgage had relied on the guidance in the email from the USDA on that point.

At the conclusion of the hearing, I encouraged the parties to engage in further settlement discussions in an attempt to resolve this matter.  The parties requested additional time to do so and I entered an Order (ECF No. 70) postponing any decision on the Show Cause Order to allow the parties to continue to explore settlement.  The parties then filed five motions requesting extensions of time (ECF Nos. 71, 73, 75, 77, 79).  No settlement has been reached.

## II.  LEGAL ANALYSIS

Under Federal Rule of Civil Procedure 16(f), a court "may issue any just orders," on motion or on its own, to sanction a party or attorney who "is substantially unprepared to participate" or who "does not participate in good faith" in a pretrial conference, or who "fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(B)-(C).  Rule 16(f)(1) specifically authorizes dismissal of an action,[2] and a district court has discretion to dismiss a case when "[c]onfronted with repeated failures to comply with its scheduling orders . . . ."  *McKeague v. One World Techs., Inc.*, 858 F.3d 703, 706 (1st Cir. 2017).  Indeed, it is "well established" that "all orders governing the management of a case are enforceable under pain of sanction for

---

[2] Rule 16(f)(1) specifies that "any just orders" includes those authorized by Rule 37(b)(2)(A)(ii)–(vii). Rule 37(b)(2)(A)(v) provides that a court may "dismiss[] the action or proceeding in whole or in part."

unjustifiable violation." *Barreto v. Citibank, N.A.*, 907 F.2d 15, 16 (1st Cir. 1990) (per curiam). However, "dismissal with prejudice is a harsh sanction which runs counter to [the] strong policy favoring the disposition of cases on the merits." *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 692 (1st Cir. 1993); *see also McKeague*, 858 F.3d at 707-08.

In addition to dismissal as a possible sanction, Rule 16(f) provides for an award of attorney's fees:

> Instead of or in addition to any other sanction, the court must order the party [who failed to comply with this rule], its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(2). "When a trial court is faced with a violation of a court order, it may choose from a broad universe of possible sanctions . . . [and] in making the choice of a[n appropriate] sanction, the court must give individualized consideration to the particular circumstances of the case." *Velázquez Linares v. United States*, 546 F.3d 710, 711 (1st Cir. 2008).

Here, Carrington Mortgage has twice violated orders of this Court, without any justification, and has consistently failed to communicate to Haynes a reliable assessment of her ability to obtain a loan modification. At the judicial settlement conference held on March 9, 2018, Carrington Mortgage represented, as it had during private mediation the previous year, that it would consider Haynes and her husband's joint income if they submitted a new loan modification application package. That new application was subsequently denied. The denial notice referenced Haynes' take-home income as being insufficient and made no reference to her husband's take-home

7

income. At the July 24 evidentiary hearing, Gordon testified that the reason for the denial was that Carrington Mortgage was prohibited from considering Haynes' husband's income when assessing the application because of controlling USDA guidance. Carrington Mortgage then informed the Court on August 17 that the denial actually resulted, at least in part, from a missing contribution letter. During the second evidentiary hearing on October 1, however, no mention was made of a contribution letter, and Carrington Mortgage clarified that it was, in fact, the informal USDA guidance that it had received in an email that prevented it from considering Haynes' husband's income.

This series of contradictory communications from Carrington Mortgage is significant for several reasons. First, it means that when Carrington Mortgage attended the settlement conference on March 9, 2018, it was either unaware of the USDA guidance that it now relies on to disregard Haynes' husband's income, or it knowingly made representations that contradicted the USDA guidance. Therefore, Carrington Mortgage was either "substantially unprepared to participate" in the settlement conference or "d[id] not participate in good faith." Fed. R. Civ. P. 16(f)(1)(B). Second, during the months following the settlement conference, Carrington Mortgage failed to effectively communicate to Haynes the process that it had undertaken to evaluate her newest loan modification request and the exact basis for its denial. That lack of communication with Haynes and with the Court constitutes a failure to comply with the March 9 Order. Carrington Mortgage also failed to comply with the Show Cause Order by neglecting to file a verified response

communicating clearly to the Court the steps it had taken to comply with the deadlines set by the March 9 Order.

Carrington Mortgage's repeated failure to adequately communicate to Haynes its conclusion that USDA guidance prevented it from including her husband's income when evaluating her modification applications was, at best, a product of inattention and carelessness. Its noncompliance with Rule 16 and with this Court's orders, as described above, imposed unnecessary hardship on Haynes. However, although Carrington Mortgage's litigation conduct is reproachable, I am persuaded that it arose from Carrington Mortgage's lack of concern for the obligations it owes Ms. Haynes, as its customer and toward the judicial process. Accordingly, Carrington Mortgage's conduct represents misfeasance and not malfeasance. For that reason, I do not impose the ultimate sanction of dismissal. Instead, pursuant to Fed. R. Civ. P. 16(f), I award Haynes her reasonable attorney's fees incurred as a result of the specific misconduct at issue.

An award of attorney's fees that is imposed for the violation of civil procedures is compensatory in nature and "may go no further than to redress the wronged party" for the specific misconduct at issue. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). Carrington Mortgage's misconduct began with its failure to either adequately prepare for the settlement conference or to participate in the settlement conference in good faith by committing to consider Haynes and her husband's joint income in determining Haynes' eligibility for a loan modification when, it now contends, USDA guidance prohibited it from doing so. That misconduct continued when Carrington Mortgage subsequently failed to adequately inform

Haynes and the Court of that governing guidance. These events caused Haynes to incur attorney's fees in preparing additional loan modification applications and preparing for and participating in two evidentiary hearings. Therefore, Haynes is entitled to her reasonable attorney's fees incurred in connection with the settlement conference and hearings beginning on the date of the settlement conference, on March 9, 2018, to the date this Order is docketed, February 6, 2019.

Finally, Carrington Mortgage has not demonstrated that its noncompliance with Rule 16 was "substantially justified" or that other circumstances would make an award of expenses unjust. *See* Fed. R. Civ. P. 16(f)(2). Carrington Mortgage informed the Court in an unverified response to the Show Cause Order that its new attorney had not received the transfer file from its prior attorney until May 3. But Carrington Mortgage offered no explanation as to why its prior attorney had failed to file the preliminary assessment as required by the March 9 Order, even though the attorneys did not move to withdraw until after the April 25 deadline. Carrington Mortgage's response also did not offer any explanation or justification for the fact that the April 3 denial letter that it had mailed to Haynes did not include a detailed explanation for its denial of the loan modification request, as required by the March 9 Order. Therefore, an award of attorney's fees is justified for the purpose of compensating Haynes for the attorney's fees she unnecessarily incurred as a consequence of Carrington Mortgage's misconduct.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Carrington Mortgage shall pay Haynes' reasonable attorney's fees incurred from March 9, 2018, to February 6,

2019, in connection with the judicial settlement conference and the related proceedings that followed.

It is further **ORDERED** that the Defendant shall file an updated attorney fee affidavit for the above-stated time period with the Court by Monday, February 18, 2019. The Plaintiff shall have the opportunity to file a memorandum in response no later than seven days after the Defendant's attorney fee affidavit is filed. The Defendant may file a reply memorandum within five days thereafter.

**SO ORDERED.**

**Dated this 6th day of February, 2019.**

                                                /s/ **JON D. LEVY**
                                  **CHIEF U.S. DISTRICT JUDGE**