# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CARRINGTON MORTGAGE SERVICES, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROXANE M. GIONEST, )<br>)<br>Defendant. ) | Docket No. 2:16-cv-00534-NT |

## ORDER ON DEFENDANT'S MOTION TO EXCLUDE FROM ADMISSION PLAINTIFF'S TRIAL EXHIBITS

I held a bench trial in this case on September 24, 2019. On September 23, 2019, the Defendant filed this motion seeking to exclude Plaintiff's Exhibits 6, 9A, 9B, 9C, 14, and 16[1] because they were not provided to the Defendant until the day before trial. (ECF No. 121.) At trial, I reserved ruling on this motion and conditionally admitted the six challenged exhibits. For the reasons stated below, I **GRANT in part** and **DENY in part** the Defendant's motion to exclude.

---

[1] Exhibit 6 is the Limited Power of Attorney from Bank of America to Carrington Mortgage. Exhibit 9A is an Order from the Bankruptcy Court in the Middle District of Florida confirming the liquidation plan for Taylor, Bean and Whitaker ("**TBW**"), dated July 21, 2011. Exhibit 9B contains the Settlement Agreement between Government National Mortgage Association ("**Ginnie Mae**") and TBW, and Exhibit 9C is the Bankruptcy Court's Order approving that Settlement Agreement, dated January 2, 2014. Exhibit 14 is the Bank of America loan payment history for the Defendant's mortgage, which covers the period from August 25, 2009, through November 4, 2014. Finally, Exhibit 16 contains the judgment figures, setting forth the total amounts that the Plaintiff alleges is due on the Defendant's mortgage as of September of 2019.

## BACKGROUND

This case has a long history, much of which was summarized by Judge Levy in an order entered on February 4, 2019, during unsuccessful settlement negotiations. (ECF No. 84.) After that Order was issued, Judge Levy ordered the Plaintiff to pay the Defendant attorney's fees incurred in connection with the judicial settlement conference and subsequent hearings. (ECF No. 90.) A final pretrial conference was held on April 30, 2019, and on May 3, 2019, a Report of the Final Pretrial Conference and Order was issued. ("**Pretrial Order**") (ECF No. 95). The Pretrial Order stated,

> Discovery. Discovery is complete. Counsel identified no outstanding discovery issues at the conference requiring the court's intervention. Attorney Ney agreed to provide to [the Defendant's attorney] copies of all exhibits listed in the plaintiff's final pretrial memorandum by May 10, 2019.

Pretrial Order 1. The Order further provided,

> Exhibits. The parties shall exchange exhibits by May 17, 2019. The parties shall jointly prepare a consolidated list of all exhibits to be offered at trial, employing the form available on the Court's website—http://www.med.uscourts.gov/—by May 29, 2019.

Pretrial Order 2.

When the final pretrial conference was held and Pretrial Order was issued, the Plaintiff was represented by attorneys John Ney, Ernest Wagner, and Carrie Folsom,[2] and the Defendant was represented by Attorney Joseph Goodman. On May 17, 2019—the deadline for the exchange of exhibits—Attorney Ney sent Attorney Goodman an email, which read in part, "Please find attached the proposed trial

---

[2] The Plaintiff was initially represented by attorneys from Doonan, Graves, & Longoria LLC. The Court granted those attorneys' motions to withdraw on May 15, 2018, shortly after Attorney Ney entered his appearance. (ECF Nos. 36 and 38.)

2

exhibits to date and witness & exhibit list." Goodman Aff., Ex. A (ECF No. 120-1). The exhibit list contained the following entries:

1. Originals or certified copies of the Note, Mortgage, and all endorsements, allonges, assignments, or other relevant instruments.
2. Originals or certified copies of Loan Modification Documents and all relevant information thereto.
3. A copy of the Notice of Default sent to Defendant.
4. Business records evidencing payment history of Defendant and balance due on the subject loan.
5. All documents introduced or listed by Defendant.

Goodman Aff., Ex. A. The document also stated, "Plaintiff reserves the right to supplement or add to the Witness and Exhibit Lists upon sufficient prior notice to Defendant prior to trial." Goodman Aff., Ex. A. Although the email contained several attachments, none of the contested exhibits was attached.[3] Goodman Aff., Ex. A.

On May 29, 2019, attorneys Brett Messinger and Elizabeth Lacombe entered their appearances for the Plaintiff.[4] (ECF Nos. 98 and 99.) Counsel for both parties acknowledge that they had some discussion about the joint exhibit list that day. According to the Defendant, Plaintiff's counsel sent an email to defense counsel stating that, "Also, I know we need to coordinate filing the exhibits list today. I have court this morning but expect to send something over to you this afternoon to add

---

[3] The documents attached to the email were copies of the Note; Mortgage; 2012 Loan Modification Agreement; 2011 Assignment from MERS to Bank of America; 2015 Assignment from Bank of America to Carrington Mortgage; 2016 Quitclaim Assignment to Carrington Mortgage signed by Elizabeth Gonzales, Default Document, Teamlead on behalf of "Carrington Mortgage Services, LLC, as attorney-in-fact for Government National Mortgage Association [(Ginnie Mae)] for Taylor, Bean & Whitaker Mortgage Corp."; Limited Power of Attorney between Ginnie Mae and Carrington Mortgage Services; and Carrington Mortgage payment history for the mortgage.

[4] Notably, attorneys Ney, Folsom, and Wagner never filed a motion to withdraw and are still listed as attorneys on this case. *See* Local Rule 83(c) ("No attorney may withdraw an appearance in any action except by leave of Court.").

your exhibit references." Def.'s Reply 3–4 (ECF No. 131). After defense counsel responded that the Defendant had no exhibits, Plaintiff's counsel stated, "I'll be in touch about the exhibits list later today." Def.'s Reply 4. Plaintiff's counsel filed the exhibit list on the Court's docket later that evening (ECF No. 101), apparently without further discussion with defense counsel. *See* Def's Reply 4. The Plaintiff does not dispute these facts, although the Plaintiff suggested at trial that "Mr. Goodman just didn't engage" on the joint exhibit list. *See* Pl.'s Response 6–7 (ECF No. 130); Trial Tr. at 23 (ECF No. 128). It appears that no additional exhibits were exchanged until September.

Trial was initially set for June of 2019, but the Court granted the Defendant's unopposed motion to continue trial. On September 23, 2019—the day before the new trial date—defense counsel received a package of trial exhibits from the Plaintiff, six of which the Defendant had not previously received. *See* Goodman Aff. ¶¶ 4–5. The Defendant promptly filed a motion to exclude those six exhibits, arguing that exclusion is warranted because the Plaintiff failed to comply with the Pretrial Order that the parties "shall exchange exhibits by May 17, 2019."[5] At the beginning of the trial on September 24, 2019, I heard from both parties on this issue. I reserved ruling on the motion, conditionally admitted the challenged exhibits pending the resolution of the motion, and invited the parties to file responsive briefs on the motion.

---

[5] The Defendant also argues that the Plaintiff has violated the initial disclosure requirements of Federal Rule of Civil Procedure 26(a). Because I find that sanctions are warranted under Rule 16, I decline to address the Rule 26(a) issue.

4

## LEGAL STANDARD

The Federal Rules of Civil Procedure "endow trial judges with formidable case-management authority," and a "party who flouts a court order does so at its own peril." *Mulero-Abreu v. Puerto Rico Police Dep't*, 675 F.3d 88, 91 (1st Cir. 2012) (internal quotation omitted); *Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 37 (1st Cir. 2012). A trial court "[c]onfronted with repeated failures to comply with its scheduling orders . . . [has] considerable discretion in deciding what to do." *McKeague v. One World Techs., Inc.*, 858 F.3d 703, 706 (1st Cir. 2017). The "choice of an appropriate sanction must be handled on a case-by-case basis." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002) ("This flexibility is necessary because the circumstances attendant to noncompliance are apt to differ widely.").

Federal Rule of Civil Procedure 16 governs pre-trial procedures. Under Rule 16(f), the court can impose sanctions, "including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Rule 37, in turn, enables the court to "prohibit[ ] the disobedient party from . . . introducing designated matters in evidence" or to "dismiss[ ] the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(ii), 37(b)(2)(A)(v).

## DISCUSSION

The Defendant argues that the six Plaintiff's exhibits that were not provided before September 23, 2019, should be excluded. The parties agree that the First Circuit's five-factor test from *Esposito v. Home Depot U.S.A., Inc.* should guide my

discretion here.[6] In *Esposito*, the First Circuit held that the district court had abused its discretion in precluding the plaintiff from calling his expert witness. 590 F.3d 72, 80–81 (1st Cir. 2009). In its review of the district court's decision, the *Esposito* court considered the following factors:

> (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.

*Id.* at 78.

## I. The History of the Litigation

In *Esposito*, the First Circuit noted that it was not "a case of a party repeatedly balking at court-imposed deadlines." *Esposito*, 590 F.3d at 79. Nor was it a case "where the sanctioned party ignored pre-sanction warnings from the district court" or a case that "involve[d], from all appearances, an act of calculated gamesmanship" by the sanctioned party. *Id.*

In contrast, over the life of this litigation, the Plaintiff has failed to comply with multiple Court orders:

- March 9, 2018 Order instructing Plaintiff's attorney to file a written report by April 25, 2018, "setting forth the steps taken by Carrington Mortgage to evaluate [the Defendant's request for a loan modification], and providing the Court with Carrington Mortgage's preliminary, good faith assessment" of her eligibility for a modification." (ECF No. 32)

- May 9, 2018 Show Cause Order instructing the Plaintiff to file a verified response within seven days "showing cause as to why the Complaint (ECF No.

---

[6] *Esposito*—and most of the cases that rely on it—arose in the context of a party's untimely disclosure of an expert. Although that context is slightly distinct, I apply the *Esposito* factors to explain why exclusion of the exhibits is especially warranted here.

6

1), should not be dismissed, with prejudice, for failure to comply with the [March 9 Order.]" (ECF No. 35)

- March 26, 2019 Order requiring the Plaintiff to pay the Defendant "her reasonable attorney's fees and expenses in the amount of $22,659.20 within thirty days." (ECF No. 90)

- May 3, 2019 Report of Final Pretrial Conference and Order requiring the parties "exchange exhibits by May 17, 2019." (ECF No. 95)

In addition, as Judge Levy found in the February 6, 2018 Show Cause Order, the Plaintiff has engaged in a "series of contradictory communications" with the Court and the Defendant. (ECF No. 84.)

The Plaintiff attempts to downplay these instances of noncompliance, arguing that the case "did not require judicial intervention with respect to compliance with *discovery* deadlines."[7] Pl.'s Response 6 (emphasis added). This fact does nothing to excuse or explain the Plaintiff's repeated failures to meet the Court's other deadlines or to meet its obligation to provide exhibits to the Defendant by May 17, 2019.

The history of this litigation demonstrates that the Plaintiff has repeatedly flouted this Court's orders, even after sanctions were imposed. As such, this factor supports exclusion of the exhibits. *Velez v. Awning Windows, Inc.*, 375 F.3d 35, 41 (1st Cir. 2004) (where the Court "sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance") (internal quotations omitted); *Tower Ventures*, 296 F.3d at 46 (disregard of court orders "robs them of their utility"); *see also Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985) (stating that a scheduling order "is not

---

[7] There was no need for judicial intervention during the discovery exchange because, as the Plaintiff acknowledges, no discovery took place.

7

a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril").

## II. The Plaintiff's Need for the Exhibits

The Plaintiff states that the challenged exhibits "are necessary for Plaintiff to be able to prove its prima facie case" and that excluding the evidence "could carry 'the force of a dismissal.'" Pl.'s Response 7 (quoting *Esposito*, 590 F.3d at 79).

The Plaintiff overstates the significance of these exhibits and understates the other vulnerabilities of its case. To prevail in a foreclosure action, the Plaintiff must establish that it owns the mortgage. *See Bank of Am., N.A. v. Greenleaf*, 96 A.3d 700, 709 (Me. 2014). In order to establish its ownership here, the Plaintiff appears to rely on Exhibit 7, which is a 2016 "Quitclaim Assignment" of the mortgage to Carrington Mortgage and signed by Elizabeth Gonzales, Default Document, Teamlead on behalf of "Carrington Mortgage Services, LLC, as attorney-in-fact for Government National Mortgage Association [(Ginnie Mae)] for Taylor, Bean & Whitaker Mortgage Corp." Pl.'s Ex. 7. However, because no power of attorney was admitted at trial,[8] I only

---

[8] At trial, I excluded the Limited Power of Attorney given by Ginnie Mae to Carrington Mortgage because the Plaintiff had not established that it covered the Defendant's mortgage. The Limited Power of Attorney states that Ginnie Mae

> appoints **Carrington Mortgage Services, LLC (Carrington), as Attorney-in-Fact for [Ginnie Mae] for Taylor, Bean & Whitaker pursuant to 12 U.S.C., 1721 (g)** as its true and lawful attorney-in-fact, in its name, place and stead, and for its benefit, in connection with Ginnie Mae-owned mortgage pooled loans described in that certain Contract Number **DU100G-14-C-01**, entered into by and between Ginnie Mae and Carrington, dated **February 13, 2014** ("Contract") for the purpose of performing all acts and executing all documents in the name of Ginnie Mae necessary and incidental to transfer of said loans. . . . This limited power of attorney shall be effective as of **February 13, 2014** and shall continue in full force and effect until the date of expiration or termination of Contract **DU100G-14-C-01**, including any extensions thereof.

8

conditionally admitted Exhibit 7, on the theory that the Plaintiff might be able to establish its relevance through other means. But nothing in Exhibits 6, 9A, 9B, 9C, 14, or 16 seems to address this issue, and thus the admission or exclusions of these exhibits is not what will determine the success of the Plaintiff's case. [9] At most, this factor is neutral.

## III. The Plaintiff's Justification for the Late Disclosure

The Plaintiff's only justification for failing to provide the exhibits is that current counsel did not become aware of the noncompliance until a few days before trial. Pl.'s Response 7–8. The Plaintiff further states that there was no "intentional disregard of this Court's Order." Pl.'s Response 8. I find several problems with this argument. First, the purported "former counsel" never moved to withdraw from this case. Attorneys Ney, Folsom, and Wagner represented the Plaintiff in May of 2019 and are still listed as active attorneys on the docket. Second, the latest-coming counsel—attorneys Messinger and Lacombe—also have the responsibility to ensure

---

Pl.'s Exhibit 8 (emphasis in original). This language indicates that Carrington Mortgage's authority to act as Ginnie Mae's power of attorney only extended to certain mortgages described in a specific contract. The Plaintiff did not produce that contract or any other evidence establishing that the Defendant's mortgage was included in that contract. The Carrington Mortgage witness stated that he had never seen the contract and was not involved in any process by which Carrington Mortgage obtained the power of attorney. Trial Tr. 164–65 (ECF No. 128). Because the Plaintiff could not establish the link between the Limited Power of Attorney and the Defendant's mortgage, I excluded the Limited Power of Attorney as irrelevant.

[9] At trial, the Plaintiff suggested that the bankruptcy records in Exhibits 9A, 9B, and 9C could establish the relevance of Exhibit 7. *See* Trial Tr. 123–24 (stating that the documents show how "Ginnie Mae took back the ownership interest in the Taylor, Bean & Whitaker files, and that's how Ginnie Mae enters and is allowed to appoint people to act on its behalf such as Carrington, and that's the connection"). However, those exhibits at most establish a link between TBW and Ginnie Mae. Nothing in those exhibits establishes that Carrington Mortgage was authorized to act as power of attorney for Ginnie Mae with respect to this mortgage. I await further development of this issue in post-trial briefing, but this appears to be the most vulnerable link in the Plaintiff's chain of title.

9

compliance with all orders and deadlines. After entering their appearances, counsel had over three months to review the case files to verify that all deadlines had been met. Third, current counsel's late discovery of the problem does not explain why the attorneys who were on the case on May 17, 2019, failed to comply with the Pretrial Order. Those attorneys certainly should have been aware of the deadline and aware of which exhibits they had provided to the Defendant. Given that knowledge, their failure to comply appears more intentional than not. This factor supports exclusion of Exhibits 6, 9A, 9B, 9C, and 14.

However, I find that this factor does not support the exclusion of Exhibit 16, which contains judgment figures that are current through September 30, 2019. The Defendant argues that the Plaintiff should have provided an earlier version of the judgment figures by the May 17, 2019 deadline. That may be so, but unlike the other contested exhibits, which have not changed since May, the judgment figures continued to evolve after the Pretrial Order was issued. Thus, the Plaintiff likely would have provided an updated version of Exhibit 16 closer to trial anyway, and the Plaintiff was more justified in doing so. As such, this factor weighs against exclusion of Exhibit 16.

**IV. The Defendant's Ability to Overcome the Late Disclosure's Adverse Effects**

The Defendant identifies several ways in which the late production of the exhibits prejudiced her defense. For Exhibits 9A, 9B, and 9C, which are documents

from Taylor, Bean & Whitaker Mortgage Corp.'s bankruptcy proceedings,[10] the Defendant notes that the Plaintiff has offered them "to establish the legitimacy of the Ginnie Mae power of attorney to Carrington." Def.'s Reply 7. The exhibits contain 86 pages, and the Defendant contends that "[i]t simply was impossible, less than 24 hours before trial was begun, for Gionest's counsel to assimilate the information in these newly produced exhibits, to verify that they did support [the] Ginnie Mae power of attorney and to make a reasoned determination as to whether there was countervailing evidence." Def.'s Reply 7.

In response, the Plaintiff argues that these exhibits are "self-authenticating" and "offered without any witness." Pl.'s Response 9. As such, the Plaintiff questions what the Defendant could have done with these exhibits at trial when the Defendant had no witness to cross-examine and no documents to offer to counter. Pl.'s Response 9. The Plaintiff adds that the Defendant "was on notice" about the issues in the case and thus "it is unclear how Defendant was prejudiced in her ability to defend in this litigation." Pl.'s Response 8–9. These statements ignore other ways in which the Defendant could have used the used the exhibits both before and at trial, such as weighing the strength of the evidence against her, shaping her arguments, and potentially calling her own witnesses. In addition, even if the Defendant was "on notice" of the Plaintiff's arguments, she still may have been hindered in her ability to prepare for trial. *See Esposito*, 590 F.3d at 78 ("[T]he rules require formal disclosure

---

[10] As of the date of this Order, the docket for this bankruptcy case contains 8,958 entries.

11

for a reason: without it, parties like the defendants in this case may be hindered in their ability to prepare effectively for trial.").

As for Exhibit 14, which contains the Bank of America loan payment history, the Defendant argues that the late disclosure "deprived [her] of any opportunity to seek and obtain" a forensic evaluation of the full loan payment histories. Def.'s Reply 7. Such evaluations, the Defendant asserts, often uncover "errors and omissions." Def.'s Reply 7. The Plaintiff contends that the payment history in Exhibit 14 was "incorporated directly into Exhibit 15," which the Defendant did possess. Pl.'s Response 8. However, the Defendant still lacked the opportunity to scrutinize the Bank of America payment history. Furthermore, as defense counsel noted at trial, his ability to cross-examine the Bank of America witness was undermined by his inability to review and evaluate the payment history before trial.[11] *See* Trial Tr. at 24–25.

Finally, the Plaintiff argues that "had Defendant raised this issue [earlier] . . . Plaintiff would have worked expeditiously to cure the defect and Defendant would have ultimately had adequate time to review and consider these additional exhibits in preparation for trial." Pl.'s Response 8. Incredibly, the Plaintiff states that, "[o]n May 29, 2019, Defendant was the only party to this litigation who knew, or should have known, that the exhibits produced by Plaintiff's predecessor counsel did not include all documents identified on the May 29, 2019 Exhibit List filed by Plaintiff's current counsel." Pl.'s Response 8. As much as attorneys Messinger and Lacombe

---

[11] Although defense counsel did not advance the same argument with regard to Exhibit 6 (Limited Power of Attorney from Bank of America to Carrington Mortgage), his ability to cross-examine the Bank of America witness was likely also hindered by its late disclosure.

12

would like to distance themselves from attorneys Ney, Folsom, and Wagner, all five attorneys are still active on this case. Moreover, all five represent the *same* party, and thus all of them—including the latest-coming attorneys—"should have known" which exhibits their client had not yet provided to the Defendant. This factor favors exclusion of Exhibits 6, 9A, 9B, 9C, and 14.[12]

## V. The Late Disclosure's Impact on the Court's Docket

This case has lingered on the Court's docket for years, and the Plaintiff's last-minute delivery of exhibits to the Defendant created the need for this motion and further delayed resolution of the case. *See González-Rivera v. Centro Médico Del Turabo, Inc.*, 931 F.3d 23, 28 (1st Cir. 2019) (noting that "whenever a party, without good cause, neglects to comply with reasonable deadlines, the court's ability to manage its docket is compromised") (internal quotations omitted). The Plaintiff now suggests "that the more appropriate order . . . should be to permit Defendant leave to file a motion seeking to re-open evidence." Pl.'s Response 10. Permitting that course of action would extend the life of this case even more.

The Plaintiff argues that the Defendant "had the ability to raise this issue almost four months before trial and either failed or chose not to do so." Pl.'s Response 9. Of course, the Plaintiff could have also recognized that it was not in compliance with the Court's order. It is counsel's duty to make themselves aware of existing Court orders and deadlines when they take on representation in the middle of the case. It

---

[12] I find that the Defendant suffered less prejudice from the late disclosure of Exhibit 16. The Defendant was on notice of these judgment figures through other exhibits, including the Carrington Mortgage Payment History (Pl.'s Exhibit 15). As such, I find that this factor does not support the exclusion of Exhibit 16.

13

is, of course, not opposing counsel's responsibility to bring them up to speed, and the opposing party should not be penalized or prejudiced for the responsible party's failure to do so. This factor favors exclusion.

## VI.  Summary

The Plaintiff maintains that it has a compelling need for the contested exhibits. But a compelling need alone "cannot carry the day." *González-Rivera*, 931 F.3d at 29; *see also Samaan v. St. Joseph Hosp.*, 274 F.R.D. 41, 50 (D. Me. 2011) ("Because [plaintiff's] need for [the] evidence is the only *Esposito* factor weighing in his favor, the Court finds that preclusion is appropriate."). "Judicial decisions about sanctions cannot be made solely from the perspective of one party to the case but, rather, must strike an equitable balance between the rights and responsibilities of all of the affected parties." *González-Rivera*, 931 F.3d at 29. Based on the analysis above, I find that exclusion of Exhibit 16 is not warranted. However, four of the five factors strongly support exclusion of Exhibits 6, 9A, 9B, 9C, and 14, and the Plaintiff's purported need for them—particularly in light of the other weaknesses of its case—cannot overcome that imbalance.

Although a party has a right to be represented by the attorney of its choice, it cannot use a revolving door of attorneys to sever improper conduct by counsel into discrete episodes. The Plaintiff's failure to comply with the Pretrial Order must be viewed in the broader context of this case. Throughout this litigation, the Plaintiff has repeatedly disregarded this Court's orders. An earlier sanction awarding attorney's fees was apparently insufficient to deter the Plaintiff from subsequent

14

noncompliance. As a result, I find that exclusion of Exhibits 6, 9A, 9B, 9C, and 14 is warranted.

## CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** the Defendant's Motion to Exclude. Plaintiff's Exhibits 6, 9A, 9B, 9C, and 14 are excluded from evidence. Plaintiff's Exhibit 16 is admitted.[13] Although Federal Rule of Civil Procedure 16 authorizes an award of attorney's fees in addition to other sanctions, the Defendant's motion sought attorney's fees only in the alternative. Thus, because the Court grants the motion to exclude, the Court **DENIES without prejudice** the portion of the motion seeking fees. If the Defendant seeks attorney's fees in addition to this relief, the Defendant must file a new motion for attorney's fees within ten (10) days of this Order.

It is further **ORDERED** that each party shall file its post-trial brief within twenty-one (21) days of this Order. Each party will then have five (5) days to respond to the opposing party's brief.

SO ORDERED.

/s/ Nancy Torresen  
United States District Judge

Dated this 7th day of January, 2020.

---

[13] The Defendant's objection to the admission of Exhibit 16 pursuant to Federal Rule of Evidence 901(b)(9) is also overruled.