# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CARRINGTON MORTGAGE SERVICES, LLC, | ) )  ) Docket No. 2:16-cv-00534-NT |
| Plaintiff, | ) ) ) Re: 27 Milliken Road, |
| v. | ) Scarborough, ME 04074 ) |
| ROXANE M. GIONEST, | ) Mortgage: Nov. 7, 2008 ) Book 26457, Page 106 |
| Defendant. | ) |

## DECISION AND ORDER

In this case, the Plaintiff, Carrington Mortgage Services ("**Carrington**"), brought the following claims against the Defendant, Roxane M. Gionest Haynes[1]: Foreclosure (Count I); Breach of Note (Count II); Breach of Contract, Money Had and Received (Count III); Quantum Meruit (Count IV); and Unjust Enrichment (Count V). I held a bench trial on September 24, 2019. (ECF No. 122.) For the reasons stated below, **JUDGMENT** on Counts II and V is entered for the Plaintiff. Counts I, III, and IV are **DISMISSED** with prejudice. In addition, the Defendant's Motion to Exclude the Plaintiff's Late Reply Brief (ECF No. 137) is **DENIED**, and the Plaintiff's nunc pro tunc motion to extend time to file a post-trial reply brief (ECF No. 139) is **GRANTED**.

---

[1] After the commencement of this case, the Defendant married and changed her name to Roxane Haynes. Although her name change is not reflected on the docket, I use it throughout this Order.

## BACKGROUND[2]

On November 7, 2008, Ms. Haynes obtained a home loan from Taylor, Bean & Whitaker ("**TBW**") by executing a Note in the amount of $181,632.00. To secure the loan, Ms. Haynes executed a mortgage in favor of TBW, with Mortgage Electronic Registration System, Inc. ("**MERS**") identified "solely as nominee for [TBW]." The mortgage conveyed the property located at 27 Milliken Road, Scarborough, ME, and was recorded in the Cumberland County Registry of Deeds in Book 26457, Page 106.

As more thoroughly discussed below, the mortgage was purportedly assigned multiple times. In addition, Ms. Haynes entered into loan modification agreements in 2012 and 2013. *See* Pl.'s Trial Exs. 10, 11. Ms. Haynes's last payment on her mortgage was credited to December 2013. On July 22, 2016, Ms. Haynes was sent a letter providing notice of default.

Carrington initiated this action on October 25, 2016.[3] Over the course of a nearly a year, I granted seven motions to extend Ms. Haynes's time to answer the Complaint, as the parties asserted that they were engaging in private mediation and that Carrington was reviewing a loan modification package submitted by Ms. Haynes. The parties were unable to come to a resolution.

On March 9, 2018, a settlement conference was held before Judge Levy. (ECF No. 31.) Following that conference, Judge Levy issued an Order setting a timeline for

---

[2] A more detailed discussion of the procedural history of this case can be found in Judge Levy's February 6, 2019 Order (ECF No. 84).

[3] Carrington filed an Amended Complaint (ECF No. 113) on July 1, 2019, to correct incomplete jurisdictional allegations regarding Carrington's citizenship. *See* Pl.'s Mot. to Amend Compl. (ECF No. 106).

Ms. Haynes to submit a loan modification request to be evaluated by Carrington. Order (ECF No. 32). When Carrington failed to file a written update in accordance with that Order, Judge Levy issued a Show Cause Order, asking Carrington why the Complaint should not be dismissed with prejudice. Order to Show Cause (ECF No. 35). Judge Levy held evidentiary hearings on the Show Cause Order on July 24 and October 1, 2018. (ECF Nos. 44, 66.) The parties subsequently filed five motions requesting that the Court postpone its decision on the Show Cause Order, asserting that they were again engaged in settlement negotiations. All motions were granted. On February 6, 2019, Judge Levy issued an Order finding that Carrington failed to comply with the Court's orders and awarding Ms. Haynes attorney's fees. Order (ECF No. 84).

Trial, initially set for June 25, 2019, was later postponed until September 24, 2019. A May 3, 2019 Scheduling Order directed the parties to exchange exhibits by May 17, 2019. Report of Final Pretrial Conference and Order (ECF No. 95). Given Carrington's prior conduct in this case and because Carrington did not exchange some of its exhibits until September 23, 2019, I excluded five of Carrington's trial exhibits. Order on Def.'s Mot. to Exclude (ECF No. 132). At trial, I also conditionally admitted the June 17, 2016 Quitclaim Assignment to Carrington Mortgage (Pl.'s Trial Ex. 7) and the letter providing Ms. Haynes with notice of default (Pl.'s Trial Ex. 12).[4] Each

---

[4] I also conditionally admitted Plaintiff's Trial Exhibit 11, the June 2013 Loan Modification Agreement, because the Defendant's attorney represented at trial that it had not been exchanged before May 27, 2019. However, Exhibit 11 was not part of the Defendant's written motion to exclude, and the docket shows that the Exhibit was publicly filed as part of a prior evidentiary hearing. (ECF No. 63-4). Thus, Exhibit 11 is admitted outright.

3

was conditionally admitted on the grounds that Carrington might be able to prove its relevance.

After trial, the parties filed a joint motion to stay briefing deadlines, stating that "the parties conferred and decided to make another attempt at loss mitigation negotiations." Joint Mot. to Stay Deadlines (ECF No. 126). I granted that motion and directed the parties to file a status report within thirty days. Order (ECF No. 127). In that status report, Carrington stated that, although Ms. Haynes "has not been approved for traditional loss mitigation options based on USDA loss mitigation guidelines, Plaintiff is still in the process of exploring whether there are alternate, non-traditional loss mitigation options that might be available to facilitate a resolution of this matter." Pl.'s Court Status Report (ECF No. 129). To date, no subsequent update on that process has been received.

## DISCUSSION

Carrington advances five claims against Ms. Haynes: Foreclosure (Count I); Breach of Note (Count II); Breach of Contract, Money Had and Received (Count III); Quantum Meruit (Count IV); and Unjust Enrichment (Count V).

I. **Foreclosure Count**

In Maine, foreclosure "is a creature of statute." *Bank of Am., N.A. v. Greenleaf*, 96 A.3d 700, 704 (Me. 2014). Pursuant to 14 M.R.S. § 6321, the "mortgagee or any person claiming under the mortgagee" may seek foreclosure of mortgaged property. 14 M.R.S. § 6321; *Greenleaf*, 96 A.3d at 704–05. The mortgagee "is a party that is entitled to enforce the debt obligation" based on its interest in both the note and the

mortgage. *Greenleaf*, 96 A.3d at 705 (internal quotations omitted). As the possessor of the Note, which was indorsed in blank, Carrington proved its status as the holder of the Note and established its right to enforce the debt. *See id.* at 705–06.

However, Carrington failed to establish that it owns the mortgage. At trial, Carrington presented evidence of three purported assignments of the mortgage:

- Assignment 1: August 27, 2011 assignment conveying the mortgage from MERS to Bank of America.

- Assignment 2: July 2, 2015 assignment conveying the mortgage from Bank of America to Carrington Mortgage Services.

- Assignment 3: June 17, 2016 quitclaim assignment conveying the mortgage to Carrington Mortgage Services and executed by Carrington Mortgage Services as attorney-in-fact for Government National Mortgage Association for Taylor, Bean & Whitaker Mortgage Corp.

Assignment 1 failed to convey the mortgage because it was executed by MERS, which did not own the mortgage and thus had no authority to assign it. *See Greenleaf*, 96 A.3d at 707 (finding that mortgage with same language only gave MERS the "right to record the mortgage" and that subsequent assignment executed by MERS could not convey ownership of the mortgage). As a result, Assignment 2 also failed to convey the mortgage, as Bank of America had no ownership interest to assign to Carrington. *Id.* at 707–08. Therefore, Carrington relies on Assignment 3—the Quitclaim Assignment—to establish its ownership of the mortgage. At trial, I conditionally admitted the Quitclaim Assignment, finding that Carrington had not yet established its relevance but giving Carrington the opportunity to attempt to do so.

The Quitclaim Assignment is purportedly executed by "Carrington Mortgage Services, LLC, as attorney-in-fact for Government National Mortgage Association

5

["**Ginnie Mae**"] for Taylor, Bean & Whitaker Mortgage Corp." Pl.'s Trial Ex. 7. This language contains two links in a chain: one between Carrington and Ginnie Mae and the other between Ginnie Mae and TBW. Thus, to establish that Carrington had the authority to execute this quitclaim, Carrington would have to prove that it had the authority to act as Ginnie Mae's attorney-in-fact and that Ginnie Mae had the authority to act on TBW's behalf. *See U.S. Bank Nat'l Ass'n v. Carney*, No. CARSC-RE-15-032, 2018 WL 1002004, at *3 (Me. Super. Jan. 16, 2018) (explaining that "proof of the existence and recording of the power of attorney is required for . . . each assignment").

To prove the link between Carrington and Ginnie Mae, Carrington offered a "Limited Power of Attorney," in which Ginnie Mae purportedly appointed Carrington as its attorney-in-fact. However, I excluded that document at trial. The Limited Power of Attorney stated that Ginnie Mae was authorizing Carrington to act on its behalf "in connection with Ginnie Mae-owned mortgage pooled loans described in that certain Contract Number DU100G-14-C-01." Pl.'s Trial Ex. 8. Carrington failed to present any evidence demonstrating that Ms. Haynes's loan was covered by that contract and, thus, failed to establish that the Limited Power of Attorney was in any way connected to the quitclaim assignment or this case. As such, I held that the Limited Power of Attorney was not relevant.[5]

---

[5] Even if the Limited Power of Attorney had been admitted, that document would not prove that Carrington was authorized to execute the Quitclaim Assignment of Ms. Haynes's mortgage. As noted, Carrington offered no evidence establishing that the contract identified in the Limited Power of Attorney covered Ms. Haynes's mortgage.

6

Citing *U.S. Bank National Ass'n v. Carney*, Carrington then argued that it could prove the necessary authority through "other evidence, such as testimony from its witness." Pl.'s Opp'n to Def.'s Post-Trial Br. 2 ("**Pl.'s Opp'n**") (quoting *Carney*, 2018 WL 1002004, at *3) (emphasis omitted) (ECF No. 136). Specifically, Carrington states that it presented evidence that Carrington serviced Ms. Haynes's loan since 2014 and that "[d]uring that time, Carrington operated under a Limited Power of Attorney from Ginnie Mae." Pl.'s Post-Trial Br. ¶ 36 (ECF No. 134). Citing the trial testimony of Demetris Dansby, a litigation case manager for Carrington, Carrington adds that this "Limited Power of Attorney was the **only** one in existence from Ginnie Mae to Carrington." Pl.'s Post-Trial Br. ¶ 36. Finally, Carrington asserts that the testimony at trial "demonstrates by a preponderance of the evidence that [the Limited Power of Attorney] exists, and that Carrington relied upon it to execute [the quitclaim assignment]." Pl.'s Post-Trial Br. ¶ 37.

Carrington, however, misrepresents the witness's testimony. Although Mr. Dansby stated, "[W]hen I asked for a Ginnie Mae limited power of attorney, this is going to be the only one that I see," he also acknowledged that he has not "been privy to see anything before . . . [20]14" and does not "know if there is any subsequent to this one." Trial Tr. 120:16–20; 121:23–122:1 (ECF No. 128). Mr. Dansby further agreed that it was "entirely possible . . . that Carrington had several contracts with Ginnie Mae by which it acquired servicing rights." Trial Tr. 163:22–25. Finally, Mr. Dansby acknowledged that he had never seen the contract referenced in the power of

7

attorney and stated that he was "not involved in any process by which Carrington procured that power of attorney." Trial Tr. 164:04–165:03.

On this record, I conclude that Carrington failed to establish that Carrington had the authority to execute the June 17, 2016 Quitclaim Assignment on behalf of Ginnie Mae. As such, the Quitclaim Assignment (Plaintiff's Trial Exhibit 7) is inadmissible as irrelevant. Without the Quitclaim Assignment,[6] Carrington has failed to prove that it owns the mortgage. *See Greenleaf*, 96 A.3d at 706–08. Because it does not own the mortgage, Carrington does not have standing to foreclose the mortgage.[7]

Unlike Article III standing, which is a prerequisite for federal subject matter jurisdiction, "statutory standing goes to the merits of the claim." *Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1st Cir. 2012) (citing *Bond v. United States*, 564 U.S. 211, 218–19 (2011)). After consuming judicial resources for more than three years and after multiple rounds of sanctions, Carrington has had adequate opportunities—including at a trial—to prove it has standing, which is an essential element for it to foreclose

---

[6] At trial, Carrington asserted that it could prove its ownership of the mortgage through other evidence. Trial Tr. 123:02–11. And in its Post-Trial Brief, Carrington states, "Ownership of the mortgage can be established by, *among other things*, a chain of assignments from the originator of the mortgage to the foreclosing plaintiff." Pl.'s Post-Trial Br. ¶ 30 (emphasis added) (ECF No. 134). However, Carrington has not specified what other evidence establishes its ownership of Ms. Haynes's mortgage. Nor has it cited to any cases in which a Maine court found that a party—that was not the original mortgagee—owned a mortgage without a valid assignment. As such, I find that Carrington has failed to prove such ownership.

[7] Because Carrington lacks standing to foreclose on the mortgage, I decline to address the parties' arguments about the applicability of 14 M.R.S. § 6111 and whether the Notice of Default complied with that statute's requirements. I have concluded that Carrington has failed to show that it owns the mortgage, and thus I find that the notice of default letter (Pl.'s Trial Ex. 12), which was conditionally admitted at trial, is irrelevant and inadmissible.

8

on Ms. Haynes's mortgage. Carrington was certainly on notice at the trial and from my January 7, 2020 Order that its evidence was falling short. It could have attempted to reopen the evidence to introduce documents or testimony that proved that it owned the mortgage. It did not do so. Rather, it has misrepresented the evidence that was introduced at trial and, now as an alternative, seeks to obtain another bite at the apple by procuring a dismissal without prejudice. *See* Pl.'s Opp'n 2–4. Because Carrington failed to prove at trial that it owns Ms. Haynes's mortgage, which is necessary for it to prevail on its foreclosure claim, Count I is dismissed with prejudice.

## II. Breach of Note Count

Carrington asks for $284,027.63 based on the claim for breach of the Note (Count II). Pl.'s Post-Trial Br. ¶ 57. Ms. Haynes concedes that Carrington is entitled to judgment on Count II for breach of the Note. Def.'s Post-Trial Br. 9 (ECF No. 133). However, Ms. Haynes disputes that Carrington is entitled to the full amount sought because not all the fees, costs, and charges in that amount are specifically provided for in the Note. Def.'s Post-Trial Br. 9. In response, Carrington shifts its stance, arguing that it can recover some of the payments through the unjust enrichment claim (Count V). Pl.'s Opp'n 8–9.

Under the terms of the Note,[8] Carrington is entitled to recover only principal, interest, and "all of its costs and expenses in enforcing this Note." Pl.'s Trial Ex. 2. Because Carrington has not shown that it owns the mortgage, it cannot recover

---

[8] Neither the 2012 nor the 2013 loan modification altered the terms of the Note at issue in the breach of Note claim. Pl.'s Trial Exs. 10, 11.

9

payments made pursuant to the Mortgage based on breach of contract. *See* Mortgage, Pl.'s Trial Ex. 3 (describing the Borrower's obligations for "Monthly Payments for Taxes and Insurance;" to "Pay Charges, Assessments and Claims;" to "Maintain Hazard Insurance or Property Insurance;" and to "Maintain and Protect the Property"); *see also Knope v. Green Tree Serv., LLC*, 161 A.3d 696, 700 (Me. 2017) ("Because of the 'failed' mortgage, the only contract between the parties is the promissory note, and most of the expenses at issue here were not paid or recoverable pursuant to that note.").

Moreover, although Carrington can recover costs incurred in enforcing the Note, it is not entitled to costs incurred in attempting to foreclose. The fee breakdowns of the Corporate Advance and Expense Advance, as set forth in Plaintiff's Trial Exhibit 16, consist almost entirely[9] of fees that are connected to foreclosure efforts. *See* Pl.'s Trial Ex. 16 (including Property Inspection fees, Brokers Price Opinion fees, FCL Title Fees, FCL Attorney Fees, FCL Recordation Costs, FCL Proceeding Costs, Foreclosure Court Costs, FCL Service Costs, FCL Certified Mail Fees, FCL Mediation 1st Session fees, FCL Mediation 2nd Session fees, Title Curative fees, Property Registration fees, and FEMA Natural Disaster fees). Carrington has not shown that these fees were incurred in enforcing the Note. As such, these fees do not fall within the scope of the Note and are unrecoverable under the breach of Note count.

---

9      The Expense Advance includes one entry for "Filing Fees." Because this fee is not labeled as a foreclosure-related fee, I find that it falls within the scope of the Note as an "expense[ ] in enforcing the Note."

10

Therefore, the total amount that Carrington can recover under Count II is $257,314.17,[10] plus interest that has accrued since September 30, 2019.

### III. Unjust Enrichment Count

Although Carrington cannot recover all fees and costs under a breach of contract theory, Carrington is entitled to recover some of those fees through a theory of unjust enrichment (Count V). Specifically, Carrington can recover its expenses for taxes and insurance as reflected in the Escrow Breakdown. Pl.'s Trial Ex. 16.

To prevail on a claim of unjust enrichment, a plaintiff must prove that "(1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for [the other party] to retain the benefit without payment of its value." *See Knope*, 161 A.3d at 699 (internal quotations omitted) (*citing Maine Eye Care Assocs., P.A. v. Gorman*, 942 A.2d 707 (Me. 2008)). "The existence of a contractual relationship between the parties that addresses the sums in dispute precludes recovery on a theory of unjust enrichment." *Id.* at 700 (internal quotations omitted). As the Law Court explained in *Knope*, "a limiting principle on the availability of restitution based on unjust enrichment is that '[a] valid contract defines the obligations of the parties *as to matters within its scope*, displacing *to that extent* any inquiry into unjust enrichment.'" *Id.* (quoting Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (Am. Law Inst. 2011)). Thus, in *Knope*,

---

[10] This amount is the sum of $187,306.31 (the principal), $69,607.86 (the interest), and $400 (the filing fee listed under the Expense Advance).

11

where Green Tree Servicing did not prove that it owned the mortgage, it was not entitled to the mortgage-based rights for reimbursement of its expenses. However, the Law Court held that Green Tree Servicing could recover its payments for taxes, insurance, and property preservation costs under a theory of unjust enrichment. *Id.* at 699–702.

As in *Knope*, because Carrington has not shown that it owns the mortgage, the only contract between the parties is the Note. *See id.* at 700. In addition, because the Note makes no mention of the taxes and insurance costs that Carrington seeks to recover, those costs are outside the scope of the parties' contractual relationship. In other words, nothing in the Note indicates that Ms. Haynes bargained for or was entitled to the benefits she received—Carrington's payment of taxes and insurance expenses. *See id.*; *Fed. Ins. Co. v. Me. Yankee Atomic Power Co.*, 183 F. Supp. 2d 76, 85–86 (D. Me. 2001) (finding that "payment bond issues" was not within the scope of the contractual relationship between the parties and thus the contract did not foreclose recovery for unjust enrichment based on those payments). As such, Carrington's ability to recover the tax and insurance costs through an unjust enrichment theory is not barred by law, and so I consider whether the elements of unjust enrichment are satisfied.

I conclude that Carrington has established the elements of unjust enrichment for the fees listed in the Escrow Breakdown. First, Carrington conferred a benefit on Ms. Haynes by paying the city taxes and hazard insurance on her property. Second, Ms. Haynes had appreciation or knowledge of these benefits because, based on the

12

mortgage, she knew that the original lender or its successor was responsible for such expenses and she was presumably aware that she was not independently paying those expenses. And third, it would be inequitable for Ms. Haynes to retain the value of those benefits without paying for them, as that would amount to a windfall for her at Carrington's expense. Therefore, Carrington is entitled to recover all fees within the Escrow Balance under an unjust enrichment theory.[11] In total, Ms. Haynes was unjust enriched (Count V) by $17,944.61.

## IV. Remaining Counts

The remaining counts are Breach of Contract, Money Had and Received (Count III) and Quantum Meruit[12] (Count IV). Carrington pleaded these as alternative theories of recovery. *See* Pl.'s Post-Trial Br. ¶¶ 48, 57. Because I have found that the Plaintiff's Breach of Note and Unjust Enrichment claims succeed, I dismiss Counts III and IV with prejudice.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** judgment in favor of the Plaintiff on Counts II and V in the total amount of $275,258.78, plus interest accruing

---

[11] The Expense Advance and Corporate Advance fees that were incurred in Carrington's attempt to foreclose are unavailable under an unjust enrichment theory because they conferred no benefit on Ms. Haynes.

[12] Quantum meruit "involve[s] recovery for services or materials provided under an implied contract, which is a contract inferred from the conduct of the parties." *Runnells v. Quinn*, 890 A.2d 713, 716–17 (Me. 2006). A valid claim for quantum meruit requires: "that 1) services be rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Id.* at 717 (internal quotations omitted). Carrington has made no argument as to why it would be entitled to any of the foreclosure-related fees under this theory.

under the Note. Counts I, III, and IV are **DISMISSED** with prejudice. The Defendant's motion to exclude the Plaintiff's late reply brief (ECF No. 137) is **DENIED**, and the Plaintiff's nunc pro tunc motion to extend time to file a post-trial reply brief (ECF No. 139) is **GRANTED**.

SO ORDERED.

/s/ Nancy Torresen<br>United States District Judge

Dated this 19th day of March, 2020.